Andrew K. Glenn, Esq.
Jed I. Bergman, Esq.
Richard C. Ramirez, Esq.
Malak S. Doss, Esq.
**GLENN AGRE BERGMAN & FUENTES LLP**
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Virginia Park 1, LLC, *et al.*, | Case No. 25-11308 (MG) |
| Debtors.[1] | (Joint Administration Requested) |

**DECLARATION OF RONALD CASTELLANO**
**IN SUPPORT OF THE DEBTORS' CHAPTER 11 PETITIONS**

Ronald Castellano, being duly sworn, states the following under penalty of perjury:

1. I am the Member of Castellano Member, LLC, a manager of Virginia Park 1, LLC ("VP1") and Virginia Park 2, LLC ("VP2"). I am also the sole member of Herman Kiefer Member, LLC, which is the sole member of Herman Kiefer Development, LLC ("HKD" and, collectively with VP1 and VP2, the "Debtors").

2. I am the owner and founder of Studio Castellano Architect, P.C., a New York-based architecture and development firm. I have over 30 years of experience in the architecture and redevelopment space, and have worked on projects totaling over 2.5 million square feet. During

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: Virginia Park 1, LLC (0280); Virginia Park 2, LLC (2898); Herman Kiefer Development, LLC (7049). The address of the Debtors' corporate headquarters is 165 East Broadway, 3rd Floor, New York, NY 10002.

the course of my time in the industry, I have worked for several prominent New York architectural firms. In 1999, I established my own firm as a comprehensive development and design company.

3. I submit this declaration pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") to provide an overview of the Debtors, their businesses, and the Debtors' Chapter 11 petitions (the "Chapter 11 Cases"), as well as to support the Debtors' Chapter 11 petitions. I am familiar with the facts set forth below, including the Debtors' financial affairs and books and records.

4. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge of the Debtors, information learned from my review of relevant documents, information supplied to me by other members of management of the Debtors and by the Debtors' professional advisors. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtor. If called upon to testify, I would testify to the facts set forth herein.

5. As more fully described below, on June 10, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6. References to the Bankruptcy Code, the Chapter 11 process, and related legal matters are based on my understanding of such matters in reliance on the explanations provided by, and on the advice of, the Debtors' bankruptcy counsel.

**PART I: OVERVIEW OF THE DEBTORS**

I. **The Debtors and the Debtors' Businesses.**

7. The Debtors are entities within a real estate development group led by New York-based Studio Castellano Architect, P.C., a multi-disciplinary firm established by me as its principal. The specific Debtor entities in these Chapter 11 Cases are:

   A. <u>Virginia Park 1, LLC</u>. Debtor VP1 is a New York foreign limited liability company with its principal place of business at 165 East Broadway, New York, New York, 10002. VP1 is incorporated in the state of Michigan.

   B. <u>Virginia Park 2, LLC</u>. Debtor VP2 is a Michigan limited liability company with its principal place of business at 165 East Broadway, New York, New York, 10002. VP2 is incorporated in the state of Michigan.

   C. <u>Herman Kiefer Development, LLC</u>. Debtor HKD is a Michigan limited liability company with its principal place of business in Detroit, Michigan. It is incorporated in the state of Michigan.

8. Since its inception, the Debtors and its non-Debtor affiliates have tackled a wide range of real estate projects across various industries, including residential, office, interior, hospitality, retail, entertainment, historic preservation, and healthcare.

9. For example, the Debtors and their non-Debtor affiliates have played an integral role in the revitalization of New York City's Lower East Side and elsewhere through the renovation and development of iconic landmarks such as the Forward building, the Garfield building, and the Jarmulowsky building. These projects have not only preserved the historic authenticity of the area but also bring a fresh and contemporary perspective to the neighborhood.

10. On the following page is a sampling of such projects:

3



Nine Orchard Hotel



Chinatown Tower



Forward Building



Garfield Building

SPURA

11. As explained in greater detail below, beginning over a decade ago, one major and cost-intensive real estate development project executed by Debtor HKD was the redevelopment of

4

the historic, 38-acre Herman Kiefer Hospital complex and surrounding properties located in the City of Detroit's Virginia Park neighborhood (the "Property").  The project includes renovating the complex's buildings as well as rehabilitating vacant homes and lots in the area surrounding the site.  The project was in partnership with the City of Detroit and the Detroit Land Bank Authority, a largely self-governed, quasi-public agency created for the purpose of managing the City of Detroit's vacant and abandoned properties.

12. The following is a rendering of the Herman Kiefer Property:



II. **Corporate Structure.**

13. Herman Kiefer JV, LLC ("HK JV"), a Delaware limited liability company, is owned by KC Detroit, LLC, OAIMK LLC, Paris Centre LLC, and Castellano Member, LLC.  HK JV wholly owns Debtor Virginia Park 2, LLC, a Michigan limited liability company, and Herman Kiefer Member, LLC ("HK Member"), a Delaware limited liability company.  HK Member wholly owns Debtor Herman Kiefer Development, LLC, a Michigan limited liability company.  Debtor Virginia Park 1, LLC, a Michigan limited liability company and New York foreign limited liability

5

company, is owned by HK JV, Paris Centre LLC, KC Detroit, LLC, I Michael Kasser, Mark Pantheon Advisors, LLC and D.R. Castellano.

14. The Debtors' properties are vacant, and the Debtors' income derives primarily from various cell tower leases, a parking lease, a billboard lease, or self-funding.

15. A simplified organizational chart of the Debtors and some of their non-Debtor affiliates is as follows:



### III. Summary of Assets and Liabilities.

A. Assets.

16. The Debtors' total assets are approximated on Exhibit E, attached hereto and as explained below. As of the date of this declaration, the Debtors hold approximately $3,500 in cash in accounts held by TD Bank and own real estate and personal property used in the Debtors' business operations, as described herein.

B. Liabilities.

17. The Debtors' total liabilities are approximated on Exhibit E, attached hereto and as explained below. The Debtors have no funded debt aside from several intercompany loans in the

6

amount of approximately $3.54 million in the aggregate outstanding. The intercompany loans were issued in 2024 and 2025 for the benefit of Debtors HKD, VP1 and VP2, and certain of their non-Debtor affiliates, all as promissory notes bearing interest at a rate of 16% per annum.

### PART II: FACTORS LEADING TO THESE CHAPTER 11 CASES

18.     For more than a decade, the Debtors have worked to redevelop the Property—the former Herman Kiefer hospital campus and its surrounding neighborhoods, which are located in an area of Detroit long marked by blight and disinvestment. As part of this massive endeavor, the Debtors poured millions of dollars into the project, and have invested significant time and resources into planning, construction, and compliance, all as part of a commitment to rehabilitating one of Detroit's most dilapidated properties and neighborhoods.

19.     The Debtors undertook this project pursuant to two agreements: a certain *Master Agreement to Purchase and Develop Land Development Agreement* (the "MDA"), dated May 25, 2016, between Debtor HKD and the City of Detroit (the "City"), and the *First Option to Purchase Property and Agreement for Maintenance of Property* (the "First Option Agreement"), dated July 5, 2017, between Debtor HKD and the Detroit Land Bank Authority (the "DLBA"). The MDA and the First Option Agreement established certain performance milestones tied to investment targets, property activation, and construction.

20.     Despite the Debtors' enormous expenditures of time, resources, and capital, their effort was first met with minimal cooperation and then outright obstruction by the City and the DLBA.

21.     Collectively, the City and the DLBA have cause substantial delays, reputational harm, and financial losses to the Debtors. Their pattern of systemic interference materially

7

impaired the Debtors' ability to meet performance milestones under the MDA and the First Option Agreement.

22. Notwithstanding their role in obstructing the Debtors' progress, in April 2024, the DLBA sent a *Notice of Breach and Demand to Cure* letter (the "Notice of Breach") to Debtor HKD alleging that it had failed to meet several obligations under the First Option Agreement.

23. Following the Notice of Breach, and throughout 2024, the Debtors worked tirelessly and in good faith to cure the alleged breaches, and submitted extensive documentation outlining the DLBA and the City's yearslong pattern of obstruction, which was the true cause of the alleged missed milestones under the MDA and First Option Agreement.

24. Despite the Debtors' cooperation, the City and the DLBA refused to engage constructively. Rather than reasonably extend performance timelines or attempt to resolve their own contractual breaches, the City and the DLBA continued to advance default claims, and proceeded unilaterally to reconvey back to the DLBA a number of the residential properties that the Debtors had already begun rehabilitating at substantial cost and effort.

25. In September 2024, the City gave formal notice that Debtor HKD had defaulted on its obligations under the MDA, and threatened to exercise its right to reconvey the Property. The City claimed that Debtor HKD had failed to meet certain investment and activation targets, and failed to comply with local hiring requirements. The Debtors promptly disputed all three of the City's allegations of breach, and detailed the factual inaccuracies underlying the City's claims. Among other issues, the City had *already issued an Activation Certificate* certifying Debtor HKD's compliance with the very provisions of the MDA the City now claimed were in breach.

26. Although the City's allegations of breach were demonstrably inaccurate, in December 2024, the City took the extraordinary step of beginning to exercise purported

8

reconveyance rights under the MDA to the Property, the crown jewel of the Debtors' investment and redevelopment efforts.

27. By this point it was clear that despite ongoing and good faith efforts to cure alleged breaches, continued performance under the MDA and the First Option Agreement was no longer economically feasible and, to most extents, even possible. Put simply, the City and the DLBA had created a "Sword of Damocles" operational environment through threats of ongoing reconveyance that left the Debtors hamstrung and unable to proceed with the vast project. With the City poised to exercise its purported reconveyance rights, the Debtors were effectively barred from engaging in any meaningful discussions with developers or investors concerning the Property.

28. On June 4, 2025, the City issued a final demand for reconveyance, demanding that Debtor HKD "convey the Property to the City…within 10 days of this demand." The City referenced its purported rights under the MDA to imminently and unilaterally reconvey the Property to itself if Debtor HKD failed to comply with its demands.

29. As a result of the City's repeated breaches, delays, reversals, lack of cooperation and obstruction, the Debtors' significant financial and operational investments into its long-standing redevelopment project were put in jeopardy. In response, the Debtors initiated these Chapter 11 Cases to preserve value, protect their rights, and to the extent necessary maintain their ongoing redevelopment efforts in a much needed area that they earnestly sought to help rehabilitate.

30. The Debtors remain committed to maximizing the value of the Property.

## PART III: FORTHCOMING "FIRST DAY MOTIONS"

31. The Debtors will be filing certain "first day" motions (the "First Day Motions") that seek specific, targeted relief intended to establish procedures for an efficient administration of these Chapter 11 Cases.

32. The relief sought in the First Day Motions will be primarily driven by bankruptcy procedural matters resulting from the commencement of the Chapter 11 Cases. As will be explained in its further pleadings, the First Day Motions will be necessary to stabilize and continue the Debtors' businesses to ensure a smooth transition into and out of Chapter 11 with minimal disruption.

33. The Debtors intend to supplement this declaration with information about the First Day Motions and other related matters, including to amend or modify any statement made herein to the extent necessary.

## PART IV: INFORMATION REQUIRED BY LOCAL RULE 1007-2

34. Local Rule 1007-2 requires certain information related to the Debtors, which I have provided in the exhibits attached hereto as **Exhibits A** through **M**.

- **Exhibit A** attached hereto provides the Debtors' current corporate structure chart.

- Pursuant to Local Rule 1007-2(a)(3), **Exhibit B** attached hereto provides, to the best of the Debtors' knowledge and belief, the names and addresses of the members of, and attorneys of, any committee organized prior to the Petition Date.

- Pursuant to Local Rule 1007-2(a)(4), **Exhibit C** attached hereto provides, to the best of the Debtors' knowledge and belief, the following information with respect to each of the holders of the Debtors' 20 largest unsecured claims on a consolidated basis, excluding claims of insiders: the creditor's name, address (including the number, street, apartment, or suite number, and zip code, if not included in the post office address) and telephone number (provided that the names, addresses and telephone numbers of current and former employees have been redacted); the name(s) of person(s) familiar with the Debtors' accounts; the

10

nature and approximate amount of the claim; and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

In each case, the claim amounts listed on Exhibit C are estimated and subject to verification. In addition, the Debtors reserve its rights to assert remedies, defenses, counterclaims, and offsets with respect to each claim.

- Pursuant to Local Rule 1007-2(a)(5), **Exhibit D** attached hereto provides the following information with respect to each of the holders of the five largest secured claims against the Debtors: the creditor's name, address (including the number, street, apartment, or suite number and zip code, if not included in the post office address); the amount of the claim; a brief description of the claim; an estimate of the value of the collateral securing the claim; and whether the claim or lien is disputed.

  In each case, the claim amounts listed on Exhibit D are estimated and subject to verification. In addition, the Debtors reserve their rights to assert remedies, defenses, counterclaims, and offsets with respect to each claim.

- Pursuant to Local Rule 1007-2(a)(6), **Exhibit E** attached hereto provides a summary of the Debtors' assets and liabilities.

- Pursuant to Local Rule 1007-2(a)(7), **Exhibit F** attached hereto provides information on the Debtors' outstanding publicly held securities, listing separately those held by each of the debtor's officers and directors and the amounts so held.

- Pursuant to Local Rule 1007-2(a)(8), **Exhibit G** attached hereto provides the following information with respect to any property of the Debtors in possession of or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditors, or agent for such entity: the name, address, and telephone number of such entity and the court in which any proceeding relating thereto is pending.

- Pursuant to Local Rule 1007-2(a)(9), **Exhibit H** attached hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtors operate their business as of the Petition Date.

- Pursuant to Local Rule 1007-2(a)(10), **Exhibit I** attached hereto sets forth the location of the Debtors' substantial assets, the location of its books and records, and the nature, location and value of any assets held by the Debtors outside the territorial limits of the United States.

- Pursuant to Local Rule 1007-2(a)(11), **Exhibit J** attached hereto provides a list of the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their property where a judgment against the Debtors or a seizure of its property may be imminent.

11

- Pursuant to Local Rule 1007-2(a)(12), **Exhibit K** attached hereto sets forth a list of the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience.

- Pursuant to Local Rule 1007-2(b)(1)-(2)(A) and (C), **Exhibit L** attached hereto provides the estimated amount of weekly payroll to the Debtors' Employees (not including officers, directors and stockholders) and the estimated amounts to be paid to officers, stockholders, directors, and financial and business consultants retained by the Debtors, for the 30-day period following the Petition Date.

- Pursuant to Local Rule 1007-2(b)(3), **Exhibit M** attached hereto provides a schedule for the 30-day period following the Petition Date, of estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing.

* * *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

New York, New York
Dated:  June 12, 2025

*/s/ Ronald Castellano*
By: Ronald Castellano

12